IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CAROL SCHNEIDER, | CV. 05-1402-PK |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

PAPAK, Magistrate Judge:

Plaintiff Carol Schneider filed this action seeking to recover disability insurance benefits pursuant to the terms of a long-term disability policy ("the Policy") issued by defendant Unum Life Insurance Company of America ("Unum"). Unum has moved for summary judgment on the grounds that Schneider's claim is barred by judicial estoppel because Schneider failed to disclose her cause of action against Unum in the bankruptcy proceeding Schneider initiated in May 2002.

For the reasons set forth below, Unum's Motion for Summary Judgment (No. 40) should be denied.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). The court must draw all reasonable inferences in favor of the party opposing the motion. *Vander v. United States Dept. of Justice*, 268 F.3d 661, 663 (9th Cir. 2001).

## FACTUAL BACKGROUND

Schneider was employed as a housing coordinator with the Housing and Community Services Agency of Lane County ("HACSA") in Eugene, Oregon. As a HACSA employee, Schneider was eligible for coverage under the group long term disability policy issued by Unum to HACSA. The Policy states that Unum will pay long-term disability benefits to an employee who, because of sickness or injury, is limited from performing the material and substantial duties of her regular occupation and has a 20 percent or more loss in monthly earnings. The Policy further provides that "disabilities due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24

months."

On February 25, 1999, Schneider submitted to Unum an application for disability benefits, claiming to be disabled as a result of injuries she suffered in a car accident in October, 1998. After reviewing medical records provided by Schneider's medical providers, Unum determined that Schneider was disabled due to anxiety and depression, and approved her claim. Unum advised Schneider that the policy contains a 24-month limitation on payments for disabilities based on self-reported symptoms and disabilities due to mental illness.

After approving Schneider's claim, Unum sought and obtained additional medical records. Based on those additional records, Unum determined that Schneider's primary disabling condition was fibromyalgia, not anxiety and depression. In a letter dated December 23, 1999, Unum advised Schneider that, "[b]ased on the primary disabling condition being Fibromyalgia, your claim will continue to be managed with a maximum payable period of 24 months. Fibromyalgia is considered a self-reporting condition. . . ."

By letter dated March 22, 2001, Unum advised Schneider that she was no longer entitled to long-term disability benefits because she had received 24 months of benefits and the policy had a 24-month limitation for conditions based on self-reported symptoms. Unum also said,

> If you have new, additional information to support your request for disability benefits, please send it to my attention. . . .
>
> If you intend to appeal this claim decision, you must submit your written appeal, including any new information, within 90 days of the date of this letter to the following address: [address omitted].

Schneider retained lawyer Judith Lerner to represent her. In a letter dated June 11, 2001, Schneider, through Lerner, appealed Unum's decision to terminate Schneider's benefits. Lerner provided Unum with a May 22, 2001, letter from Dr. Hill stating that Schneider "remains totally disabled" due to fibromyalgia. On June 20, 2001, Lerner sent Unum another letter along with a report by Robert M. Bennett, M.D., regarding Schneider's fibromyalgia.

By letter dated July 18, 2001, Unum informed Schneider and Lerner that it would not reverse its decision to discontinue Schneider's long-term disability benefits pursuant to the policy's 24-month limitation for self-reported conditions.

Schneider asked Unum to review its decision to discontinue her benefits. In a letter dated August 23, 2001, Unum advised Lerner that it was upholding its decision to discontinue Schneider's benefits.

On October 16, 2001, Lerner sent a letter to Gina Barnes, lead appeals specialist at Unum. The letter stated,

> As we discussed by telephone on September 9, 2001, you will review additional information if it is submitted shortly. My client is still seeking additional evidence . . . .
>
> Please be informed that if you do not approve Ms. Schneider's claim, or make a settlement with her, she intends to file a lawsuit.

Schneider was copied on this letter. Schneider did not submit any additional evidence to Unum.

In a letter dated November 14, 2001, Lerner informed Unum that Schneider would not submit any additional medical evidence and repeated her threat to sue if Unum did not pay benefits. Lerner asked Unum for a settlement proposal by January 1, 2002. If Unum did not

meet that deadline, Lerner stated she would advise Schneider to file a lawsuit immediately. Schneider was copied on this letter.

By letter dated December 5, 2001, Unum informed Lerner that it was again upholding its decision to discontinue Schneider's long-term disability benefits. Unum stated, "[t]his represents the final review of Ms. Schneider's file. . . ."

On February 26, 2002, Lerner sent a letter to Schneider indicating that she had not been able to find an attorney who was willing to represent Schneider in her claim against Unum. Lerner stated,

> As we discussed, Giles Gibson did not wish to handle your appeal to state court. As we also discussed, I do not handle this type of case. Giles was not very hopeful regarding the eventual outcome of any appeal.
>
> If you intend to appeal, I suggest you do so as soon as possible, as time limitations may bar your claim in the future.
>
> I did call some lawyers about finding a possible public interest law firm or insurance rights group who might be interested in handling the appeal, but have not been able to find anything. I will let you know immediately if I come up with any person or organization that might help you.
>
> My work on this case is done and I am closing my file. I will take no further action on this matter. I greatly regret I was not able to get your UNUM disability reinstated.

Lerner then goes on to wish Schneider "good luck" with her Social Security claim and to suggest Schneider's husband contact an experienced personal injury lawyer regarding his slip and fall case.

On May 1, 2002, Schneider and her husband filed a pro se voluntary Chapter 7 petition for bankruptcy and related bankruptcy schedules. In re Schneider, U.S. Bankruptcy Court for the

Page 5 - FINDINGS AND RECOMMENDATION

District of Oregon, Case No. 02-63204-aer7.  Schneider and her husband prepared the petition and schedules with the help of a bankruptcy petition preparer.

Schneider did not list her cause of action against Unum as an asset on Schedule B, which requires that the debtor "list any personal property of the debtor of whatever kind."  In response to Question 20 on Schedule B, which asks for "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Schneider listed "none."  In response to Question 9 of Schedule B, which asks for "any interest in insurance policies," Schneider listed "none."

On May 24, 2002, Lerner sent Schneider a letter informing her that lawyer Megan Glor had evaluated Schneider's claim and determined that  Schneider had a "fairly slim chance."  Lerner stated,

> I think this is the end.  As far as I can find after a lot of searching, there is no public interest firm willing to take on a case like this on a pro bono (no fee) basis.  Based on Megan's assessment, it does not seem sensible for you to go any further.
>
> As we discussed, you have a six-year statute of limitations for this claim.  The six years probably runs from your final denial from Unum on December 5, 2001.  I will certainly keep you in mind, and if I ever find a public interest law firm or anyone else with the resources to litigate this case for you without charging you a fee, I will contact you.  Also, maybe in the next six years, there will be an objective test for fibromyalgia.

On June 10, 2002, the trustee for Schneider's bankruptcy held the first meeting of creditors for the Schneiders.  When questioned by the Trustee under oath, Schneider stated,

> Trustee: Do you have any lawsuits where you can sue somebody else for money?
>
> Schneider: No.

On June 11, the Trustee issued a report of no assets in Schneider's bankruptcy case. On September 30, 2002, Judge Albert Radcliffe of the U.S. Bankruptcy Court issued an order discharging Schneider's debts in the amount of $291,393.09.

In January 2005, Schneider received a letter from Unum informing her that as part of a multi-state settlement with insurance regulators and the Department of Labor, Unum had agreed to implement a claim reassessment process, and that Schneider's LTD claim had been determined to be eligible for reassessment. Unum informed Schneider that "if you believe you may be eligible for benefits which you have not been paid, you are entitled to request that [Unum] review [its] previous decision to deny your disability income claim or terminate benefits being paid on such claim."

Schneider contacted Lerner,[1] who then contacted Glor. Glor subsequently agreed to represent Schneider and on April 7, 2005, sent a letter to Unum requesting a copy of Schneider's claim file. On September 6, 2005, Schneider filed this action.

ANALYSIS

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001), citing *Rissetto v. Plumbers & Steamfitters Local,* 343, 94 F.3d 597, 600-01 (9th Cir. 1996) and *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990). It is not only limited to asserting inconsistent positions in the same litigation, but also is appropriate to bar litigants from making incompatible statements in two different cases. *Hamilton,* at 782-83. The Ninth Circuit invokes

---

[1] Lerner died on May 24, 2006.

Page 7 - FINDINGS AND RECOMMENDATION

judicial estoppel not only to prevent a party from gaining an advantage by asserting inconsistent positions, but also to protect the "orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Hamilton,* 270 F.3d at 782, *quoting Russell,* 893 F2d at 1037. Because it is intended to protect the integrity of the judicial process, judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell,* 893 F.2d at 1037.

A court "may" consider three factors in determining whether to apply the doctrine of judicial estoppel: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hamilton,* 270 F.3d at 782-83, quoting *New Hampshire v. Maine,* 532 U.S. 742 (2001) (internal quotations and citations omitted). These three factors are not, however, "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire,* 532 U.S. at 751. Rather, "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.*

Here, the first two factors clearly weigh in favor of Unum. Asserting this lawsuit against Unum is clearly inconsistent to the position Schneider took in her bankruptcy filing in which she failed to disclose the claim on her bankruptcy schedule. Also, Schneider convinced the bankruptcy court to accept her position in her bankruptcy proceeding when it ordered a discharge of debt. The third factor, whether Schneider would derive an unfair advantage or impose an

unfair detriment on Unum if not estopped, favors Schneider. First, the inconsistent position poses no detriment to Unum that would not exist if Schneider had disclosed the lawsuit on her schedule. And second, the inconsistent position does not seem to give an advantage to Schneider because Schneider's potential claim against Unum, had she disclosed it on her bankruptcy schedule, would most likely be an exempt asset and thus would not pass to her creditors. *See* ORS 743.050 (exempting disability benefits from all liability of any debt of the beneficiary).

Unum argues that Schneider's lawsuit would not be exempt because she failed to disclose the asset. In response, Schneider filed an Affidavit by Thomas A. Huntsberger, the Trustee in her bankruptcy action. Huntsberger stated that Schneider's claim against Unum qualifies as an exempt asset and would not likely lose that status:

> In my experience and opinion, if I claimed an interest in the potential UNUM claim and the Social Security benefits and sought to disallow Schneider's exemptions, the Bankruptcy Court would overrule my objection and nonetheless allow the exemption in light of the fact the [Schneiders] were unrepresented by counsel and the assets in question were fully exempt health benefits.

In the Ninth Circuit an exemption will be allowed unless there is active concealment and evidence of bad faith or prejudice to the creditors. *Adermahr v. Barrus*, 30 B.R 532, 533-34 (9th Cir, 1983) (citing *Matter of Doan*, 672 F.2d 831 (11th Cir. 1982).

Because the lawsuit proceeds would be exempt, I find no evidence of prejudice to creditors. Further, as will be discussed below, I find no evidence of active concealment or bad faith in this case. I therefore assume that Schneider's suit for disability benefits would be an exempt asset, and would not benefit the creditors even if the lawsuit had been disclosed.

Because the three factors discussed above are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," *New Hampshire,* 532 U.S. at 751, I turn to the additional considerations that may "inform the doctrine's application in specific factual contexts," *Id.* In my opinion, this case presents a unique factual scenario, and it is those additional factors, which I discuss below, combined with my view of the third *Hamilton* factor, discussed above, that support my recommendation that Unum's motion be denied.

First, before filing for bankruptcy, Schneider was led to believe that her claim had effectively ended. In Lerner's February 26, 2002, letter, she informed Schneider that Lerner had been unable to find a lawyer to represent Schneider and explained that Lerner's work on the case was done and she would be closing her file. Schneider's understanding that her claim was over was confirmed by Lerner's May 24, 2002, letter to Schneider explaining Glor's assessment of the claim and stating "I think this is the end."

Second, as discussed above, Schneider's claim against UNUM is an exempt asset. Neither party has cited the court to a case involving judicial estoppel for a debtor's failure to declare an exempt asset. Judicial estoppel serves the valid purpose of protecting the integrity of the court. And the bankruptcy system requires that all assets be disclosed, even those assets that fall within an exemption. Nonetheless, when a debtor fails to disclose an exempt asset, the threat to the integrity of the system is less than if the debtor had failed to disclose a non-exempt asset.[2]

Third, I see no evidence that Schneider's failure to disclose her claim against Unum was intentional concealment or in bad faith. While the parties are generally in agreement regarding

---

[2] I also note, as discussed above, that the Schneiders filed their bankruptcy petition and schedules without the aid of counsel, and that the Trustee testified that was a significant factor in his determination that the assets in question would not lose their exempt status.

the standards for judicial estoppel, they disagree on a critical issue: whether the court may or should consider bad faith on the part of Schneider. Unum points to the leading Ninth Circuit case, *Hamilton v. v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001), wherein the Ninth Circuit applied judicial estoppel and did not discuss or analyze the debtor's intent in failing to disclose the lawsuit, and argues that intent should not be considered here. Unum also points to *Simaneau v. Nike, Inc.*, 2006 WL 977302 (D. Or.), wherein Judge Brown applied judicial estoppel without any consideration of intent on the part of the debtor. Schneider argues, and I agree, that one can infer from *Hamilton* that intent was a factor in that decision because the debtor was unscrupulous and the court made repeated reference to his bad behavior in the opinion. Schneider also points to *Kitchen v. WSCO Petroleum Corp.*, 2006 WL 118515 (D. Or.), wherein Judge Stewart did not apply judicial estoppel because she found that the debtor's failure to disclose an asset was inadvertent or a mistake rather than deliberate, intentional and in bad faith. I find that under existing Ninth Circuit caselaw, intent is a factor that, while not itself dispositive, may be considered in determining whether to apply judicial estoppel.

Finally, unlike the acts in *Hamilton*, I see no evidence in this case that Schneider was lying in the bushes, waiting for her debts to be discharged through bankruptcy before pursuing her claim against Unum. *See also Simoneau*, 2006 WL 977302 (Plaintiff filed for bankruptcy on March 31, 2003, filed a BOLI complaint on Mary 22, 2004, was issued a right to sue notice by BOLI on June 14, filed an amended Chapter 13 bankruptcy plan in August 2004, and did not disclose her claim against Nike in the amended plan.) Other than write a few letters on Schneider's behalf to Unum, Lerner took no steps to actually initiate a lawsuit. The evidence before the court suggests that Schneider would never have pursued her claim against Unum

except for the fact that Unum contacted her in 2005 and informed her of the right to seek reassessment.[3] Unum argues that Schneider also failed to disclose a Social Security claim that was pending during the time her bankruptcy claim was pending, and that the combination of the two failures indicates intent to conceal. I disagree. As noted by the Trustee, Schneider's Social Security claim was an exempt asset. A pro se bankruptcy applicant's failure to declare two exempt assets is not sufficient evidence for a finding of bad faith.

## CONCLUSION

For the reasons set forth above, Unum's Motion for Summary Judgment (No. 40) should be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 26, 2007. If no objections are filed, review

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

---

[3] My recommendation is also informed by the fact that judicial estoppel is an equitable remedy, and it is not entirely clear that Unum comes before the court with clean hands. Unum had been sued by the Department of Labor for questionable claims management, and it as only the multi-state settlement of that suit that resulted in the January 2005 letter from Unum to Schneider, in which reassessment of Schneider's claim was first mentioned.

/ / / /

of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 11th day of October, 2007.

                                               /s/ Paul Papak
                                               Honorable Paul Papak
                                               United States Magistrate Judge